Joel Anthony MITCHELL,
Jr., Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–90–01097–CR, 01–90–00103–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 9, 1992.

Rehearing Denied July 9, 1992.

**830**

James M. Sims, Constance Y. Singleton, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Mary Lou Keel, Asst. Dist. Atty., James Buchanan, Asst. Dist. Atty., for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and PRICE,[1] JJ.

OPINION

OLIVER–PARROTT, Chief Justice.

Appellant, Joel Anthony Mitchell, Jr., was indicted for possession of marijuana and possession of cocaine with intent to deliver. He pled not guilty to both offenses. The trial court found appellant guilty of both charges and assessed punishment at five-years confinement for possession of marijuana, and 20–years confinement and a $20,000 fine for possession of cocaine with intent to deliver. In three points of error, appellant argues the trial court erred in denying his motion to suppress. We reverse.

Background

On May 12, 1990, B.E. Corley, David Wall, and Officer Moran, all undercover narcotics officers with the Houston police department, were assigned to monitor the Greyhound bus station in Houston to identify and intercept narcotic couriers. The officers were not operating on information from an informant or law enforcement agency. They were just scanning passengers for suspicious conduct. Corley testified that he was standing in the front lobby of the bus station when he saw appellant get out of a car in the front of the station. Corley testified that his attention was drawn to appellant because the driver of the car had already entered the station about one minute before and was "standing around scanning the lobby area." The driver was not carrying any luggage.

Appellant walked into the lobby, stopped and briefly spoke to the driver, and then proceeded to the gate for departing buses. Corley testified that the driver followed appellant to the gate and watched him board the bus, but they did not wave or signal to each other in any way.

After appellant was seated in the back of the bus, all three officers boarded the bus. Corley and Moran approached appellant, and Wall was positioned in the front of the bus. Corley, who was seated on the arm rest of the seat immediately in front of

1. Honorable Frank C. Price, former justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

appellant, showed him his identification, told him he was a police officer, and asked if he could talk to him. Moran also showed appellant his identification and then stood directly behind Corley. Appellant agreed to talk with Corley and when asked about his destination, he responded that he was going to Shreveport. When Corley asked to see appellant's bus ticket, he handed it to Corley and said he was actually going to Chattanooga for a three-week visit. Corley then handed appellant his ticket and asked if the black bag on the floor was his. Appellant stated that it was. When Corley asked if he could look through the bag, appellant replied by asking, "Do I have a right to privacy?" Corley told appellant yes, he had a right to privacy, and if appellant preferred, he (Corley) could have a narcotics dog check the bag instead. Appellant told Corley that it was not necessary to bring in the dog and that he could look in the bag. Corley testified that appellant unzipped the bag and began to pull out several pieces of clothing. As appellant did this, Corley saw some beer and a brown paper bag. Corley testified that it was at this point when he began to search the bag himself and asked appellant if he was carrying food. Appellant replied that he was not, and that the paper bag had a pair of shoes in it. As Corley looked through the paper bag, he found packages of cocaine wrapped in foil. The paper bag was later searched again in the supervisor's office at the bus station, where officers also found marijuana.

In three points of error, appellant argues the trial court erred in denying his motion to suppress the drugs seized because the evidence was (1) seized through an illegal detention not supported by reasonable suspicion; (2) obtained through an illegal arrest, made without probable cause; and (3) obtained through an illegal, warrantless search and seizure made without probable cause.

Standard of review

The standard of review for reviewing a trial court's decision denying a defendant's motion to suppress evidence is that the evidence should be viewed in the light most favorable to the trial court's ruling. See Sawyers v. State, 724 S.W.2d 24, 35 (Tex.Crim.App.1986); Kite v. State, 788 S.W.2d 403, 406 (Tex.App.—Houston [1st Dist.] 1990, no pet.). At a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. Meek v. State, 790 S.W.2d 618, 620 (Tex.Crim. App.1990); Cannon v. State, 691 S.W.2d 664, 673 (Tex.Crim.App.), cert. denied, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). The judge may believe or disbelieve all or any part of the witness's testimony. Meek, 790 S.W.2d at 620; Cannon, 691 S.W.2d at 664. His findings should not be disturbed absent clear abuse of discretion. Meek, 790 S.W.2d at 620; Dancy v. State, 728 S.W.2d 772, 777 (Tex.Crim.App.), cert. denied, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987). If the findings are supported by the record, the only question on appeal is whether the trial court improperly applied the law to the facts. Romero v. State, 800 S.W.2d 539, 543 (Tex.Crim. App.1990); Johnson v. State, 698 S.W.2d 154, 159 (Tex.Crim.App.), cert. denied, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

Illegal detention

In his first point of error, appellant argues the trial court erred in denying his motion to suppress because the drugs were seized through an illegal detention not supported by reasonable suspicion. Appellant contends that when Corley identified himself as a police officer and asked him if he could search his bag, that was the functional equivalent of telling him he was detained. Appellant argues this was a "display of official authority such that a reasonable person would have believed he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). Because he was detained, appellant argues that the search of his bag violated his fourth amendment rights because the detention was not supported by reasonable suspicion. United States v. Berry, 670 F.2d 583, 593

(5th Cir.1982); *Johnson v. State,* 658 S.W.2d 623, 623 (Tex.Crim.App.1983).[2]

Not all encounters between police and citizens invoke the protection of the fourth amendment. *Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968); *Holladay v. State,* 805 S.W.2d 464, 467 (Tex.Crim.App.1991). A seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D.,* —— U.S. ——, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required. *Florida v. Bostick,* —— U.S. ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). It is only when police questioning of a citizen becomes a detention that it must be supported by reasonable suspicion. *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16; *Holladay,* 805 S.W.2d at 467. This reasonable suspicion is something more than an unparticularized suspicion or hunch, but it is considerably less than proof of wrongdoing by a preponderance of the evidence. *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *Holladay,* 805 S.W.2d at 496.

We must first determine when and if appellant was detained. Appellant asserts he was detained when Corley identified himself as a police officer and asked him if he could search his bag because a reasonable person would have believed he was not free to leave. Appellant asserts that "this conclusion is all the more compelling because appellant was seated at the back of a bus whose aisle and only exit was blocked by Corley and Moran." However, where the encounter takes place is one factor, but is not the only one. *Bostick,* 111 S.Ct. at 2387.

In *Bostick,* the issue presented was whether a police encounter on a bus necessarily constitutes a "seizure" within the meaning of the fourth amendment. The Court held that in a situation where officers approach a passenger on a bus, the "free to leave" analysis is inapplicable. *Bostick,* 111 S.Ct. at 2387. The Court stated:

> [T]he mere fact that Bostick did not feel free to leave the bus does not mean the police seized him. Bostick was a passenger on a bus that was scheduled to depart. He would not have felt free to leave the bus even if the police had not been present. Bostick's movements were "confined" in a sense, but this was the natural result of his decision to take the bus; it says nothing about whether or not the police conduct at issue was coercive.

*Id.*

The appropriate inquiry is whether a reasonable person would feel free to decline the officer's requests or otherwise terminate the encounter. *Bostick,* 111 S.Ct. at 2387. The crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.[3] *Id.*

As detailed above, Corley and Moran boarded the bus and approached appellant who was seated in the back. After identifying themselves as police officers,

**2.** The detention of a person is a "seizure" within the meaning of the fourth amendment. *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959).

**3.** In *Bostick,* the Court refrained from deciding whether Bostick had in fact been detained because the Florida Supreme Court decision, that a seizure had occurred, was based on the sole fact that the encounter took place on a bus. The Court stated that the facts before it left some doubt whether a seizure occurred: two

officers walked up to Bostick on the bus, asked him a few questions, and asked if they could search his bags. The Court noted that no seizure occurs when police ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage—*so long as the officers do not convey a message that compliance with their request is required.* *Bostick,* 111 S.Ct. at 2388 (emphasis added).

appellant agreed to talk with Corley. When Corley asked if he could search appellant's bag, appellant responded by asking if he had a right to privacy. Corley said that he did and told him that he could bring in a narcotics dog instead. Under the totality of the circumstances, we find that a reasonable person would not have believed that he was free to ignore Corley's request to search the bag or terminate the encounter. *See Holladay,* 805 S.W.2d at 472 (officer's request for permission to search defendant's luggage converted initial encounter into an investigative one, implicating fourth amendment protection); *Daniels v. State,* 718 S.W.2d 702, 706 (Tex. Crim.App.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986) (defendant detained when officer discovered discrepancy between name on his driver's license and plane ticket, told defendant he was a narcotics officer conducting an investigation, and asked to search his suitcase).

 In order for this detention to be justified, Corley needed reasonable suspicion to support the detention. *Daniels,* 718 S.W.2d at 704. To justify a brief investigative detention, the officer must know specific articulable facts, which, in light of his experience and personal knowledge, together with reasonable inferences, would warrant detaining the suspect. *Meeks v. State,* 653 S.W.2d 6, 12 (Tex.Crim.App.1983). Reasonable suspicion cannot be based on a mere hunch or suspicion. *Id.* Even a temporary detention is not permissible unless the circumstances objectively support a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity. *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App. 1991). Circumstances raising suspicion of illegal conduct need not be criminal. *Id.* The issue is not whether the particular conduct is innocent or criminal, but, rather the degree of suspicion that attaches to particular noncriminal acts. *Holladay,* 805 S.W.2d at 471. At a minimum, however, the suspicious conduct must differ sufficiently from that of innocent people under the same circumstances so as to clearly set the suspect apart from them. *Crockett,* 803 S.W.2d at 311.

Before boarding the bus and talking with appellant, Corley was aware of the following facts:

1. Appellant arrived at the bus station in a vehicle driven by another man.
2. The car was parked at the curb and the driver entered the bus station, followed approximately one minute later, by appellant, who carried a single travel bag.
3. Appellant walked through the station a few steps ahead of the driver.
4. Appellant boarded the bus with the bag and placed it at his feet.
5. The driver followed appellant through the station but did not board the bus.
6. The two men looked around the lobby and did not look directly at each other as they talked.

When Corley asked appellant about his destination he responded that he was going to Shreveport. When Corley asked appellant for his ticket, however, appellant said that he was actually going to Chattanooga as he handed Corley his ticket. The State argues that this constitutes a lie giving rise to articulable facts supporting a reasonable suspicion to support the detention. However, Corley also testified that he knew that the bus, in fact, was going to Shreveport, and points northeast, and therefore, had no reason to be suspicious of appellant because of that answer. Corley testified that he knew that the final destination of the bus was Chattanooga.

The "facts" described by the officers could easily describe anyone who has been given a ride to the bus station and enters the lobby with the driver. There was no testimony of any specific articulable facts that would have warranted a detention in this case. We hold that Corley had no grounds for reasonable suspicion. The detention was illegal. *See Daniels,* 718 S.W.2d at 705.

Consent

After Corley told appellant that a narcotics dog could be brought in to check the bag, appellant allowed Corley to search his bag. The State argues that appellant's consent was voluntary. We disagree.

Whether consent is voluntarily or knowingly given is a question of fact which must be determined by considering the totality of the circumstances. *Brem v. State,* 571 S.W.2d 314, 319 (Tex.Crim.App. 1978). The State must prove by clear and convincing evidence that the consent was voluntary. *Juarez v. State,* 758 S.W.2d 772, 775 (Tex.Crim.App.1988). Consent cannot be established by showing no more than acquiescence to a claim of lawful authority. *Johnson v. State,* 803 S.W.2d 272, 287 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991).

Appellant was a passenger on a bus that was to depart in 10 minutes. He was approached by two police officers, with whom he agreed to speak. Corley's request to search the bag or bring in a narcotics dog left appellant the following choices: (1) he could consent to the search; (2) he could forfeit his ticket, get off the bus, and allow the officers to bring in the narcotics dog; or (3) he could stay on the bus and allow Corley to keep his bag. There was no testimony that appellant was informed that the narcotics dog was on the premises or how much time it would take to have the dog board the bus and check his bag. Corley testified that he would have detained the bag regardless of appellant's consent, and it is uncertain whether appellant would have been allowed to leave at all. The search was inevitable. Under the totality of the circumstances, we find that appellant's consent was not voluntary.

The drugs seized in this case should have been suppressed.

Appellant's first point of error is sustained. We need not address the remaining points.

The judgment of the trial court is reversed and the cause is remanded to the trial court.