IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-647-CR




MARK ALLEN HOWE,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT



NO. 92R-051, HONORABLE DAN R. BECK, JUDGE PRESIDING



 





 This appeal is taken from an order deferring adjudication of guilt. See Dillehey v.
State, 815 S.W.2d 623 (Tex. Crim. App. 1991). Appellant waived trial by jury and entered a
plea of guilty to the offense of possession of a controlled substance, namely, lysergic acid
diethylamide (LSD). (1) The trial court, after hearing evidence, deferred the adjudication of guilt
and placed appellant on "probation" for five years subject to certain conditions. Appellant gave
notice of appeal in a manner to ensure appellate review of the trial court's pretrial ruling on the
motion to suppress evidence. See Tex. R. App. P. 40(b)(1).

 Appellant advances two points of error. He contends in separate points that the
trial court erred in denying his pretrial motion to suppress evidence "for the reason that the search of the automobile appellant was in was illegal" under (1) the Fourth Amendment to the
United States Constitution and (2) article one, section nine of the Texas Constitution.

 The search involved was a warrantless search. The State contends that it was a
valid consensual search. Appellant contends that there was no consent to search, but if there was,
the consent was not freely and voluntarily given and, moreover, was tainted by an illegal detention
or stop.

 The evidence concerning the search was developed at a hearing on the motion to
suppress evidence. The evidence might have developed in a different manner had the parties
followed the guidelines as to the burden of production and the burden of persuasion. See Russell
v. State, 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986). Once appellant had shown that the search
was a warrantless one, the burden of proof should have shifted to the State to demonstrate a
warrant, or to demonstrate the validity of the warrantless search by consent or otherwise. Instead,
appellant assumed the burden of production and burden of proof. All witnesses (including the
officer) were called and examined by appellant. The State, without objection, was content to
cross-examine some of the witnesses despite the burden of persuasion cast upon it by law.

 In a suppression hearing, the trial court is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony. Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court may accept or reject any or all of a
witness's testimony. Taylor v. State, 604 S.W.2d 175, 177 (Tex. Crim. App. 1980). In
reviewing the trial court's decision, an appellate court does not engage in its own factual review;
it determines only whether the record supports the trial court's fact findings. Romero, 800
S.W.2d at 543. If the trial court's fact findings are supported by the record, an appellate court
is not at liberty to disturb the findings, absent an abuse of discretion. Id.; see also Cantu v. State,
817 S.W.2d 74, 77 (Tex. Crim. App. 1991); Dancy v. State, 728 S.W.2d 772, 777 (Tex. Crim.
App.), cert. denied, 484 U.S. 975 (1987). On appellate review, the court normally will address
only the question of whether the trial court improperly applied the law to the facts. Romero, 800 S.W.2d at 543; Self v. State, 709 S.W.2d 662 (Tex. Crim. App. 1986); Vargas v.
State, 852 S.W.2d 43, 44 (Tex. App.--El Paso 1993, no pet.).

 The suppression hearing revealed that on May 4, 1992, during the daylight hours,
Department of Public Safety Trooper Scott Bayless stopped a Nissan automobile on State Highway
71 in Fayette County. The vehicle bore an expired inspection sticker. Trooper Bayless observed
no other traffic violations. The driver and owner of the car, Lionel Lanau, presented an expired
driver's license to Trooper Bayless, who also determined that the sticker on the license plate was
invalid. Appellant, a passenger in the Nissan, presented a valid driver's license as identification. 
A warrant check was run and it was determined by Bayless that Lanau had outstanding traffic
warrants out of Bryan, Texas. There were no warrants for appellant's arrest.

 Trooper Bayless instructed Lanau to drive his car and follow him to the Fayette
County sheriff's office to confirm the existence of the outstanding warrants. Once at the sheriff's
office, Lanau was taken inside. Appellant remained outside with his dog. The outstanding traffic
warrants were confirmed. Lanau was taken before a justice of the peace to have bonds set. 
Trooper Bayless filed traffic offenses against Lanau. Lanau entered guilty pleas and was assessed
$604.00 in fines and court costs. Lanau was unable to pay this amount. He was ordered
confined. A jailer then took Lanau outside so that he could give his car keys to appellant and
request that appellant go get the money to pay the fines and court costs.

 Thereafter, Trooper Bayless went outside and told appellant to "wait a minute" and
started asking questions. The officer admitted that appellant had done nothing wrong up to that
point. He stated that appellant was outside the car, but later conceded appellant may have been
in the driver's seat of the Lanau vehicle. Bayless acknowledged that his purpose in detaining
appellant was to see if appellant would verify what Lanau had told him "out on the road" about
their destination "what they were doing" and "that sort of thing." When asked what that had to
do with violating traffic laws, Trooper Bayless replied:



A: There is [sic] other things beside traffic laws.


Q: Truth is you were interested in maybe catching him in a story, maybe getting
into that car and looking for drugs, weren't you?

A: That is possible.


Q: That is what happened, isn't it?


A: That is what happened.



 Trooper Bayless stated that in his interrogation of appellant he developed a single
inconsistency in what appellant told him and what Lanau had earlier stated. Lanau had reported
that he was employed and appellant stated that Lanau was unemployed. Bayless related that
appellant became nervous as he continued to talk to him, and appellant's neck began to throb. 
Bayless then asked appellant about guns and narcotics in the car. Appellant denied their existence. 
Bayless acknowledged that he had no evidence, except for appellant's nervousness, of any
contraband being in the car. He then asked appellant for consent to search the car and stated that
appellant said "Okay." The written D.P.S. consent form was not used. Bayless did not request
Lanau's consent.

 Bayless's search of the car, aided by La Grange City Police Officer Charles David
Gilbreath, revealed two small packets of cocaine and L.S.D. along with some paraphernalia. 
Gilbreath testified the search was under way when he arrived on the scene. He did not personally
know if appellant had consented to the search.

 Appellant testified that he waited outside the building after Lanau was taken inside;
that Lanau later appeared, gave him the car keys, and asked him to go home and get money to pay
Lanau's fines. As appellant was about to start the car, Trooper Bayless told him to wait because
Bayless had to search the car for guns and narcotics. Appellant got out of the car and in response
to Bayless's instructions, gave the car keys to the officer. Appellant stated that he did not give
the officer consent or permission to search the car and that he was never asked. Trooper Bayless
opened the hatchback and began to search the car while asking appellant questions. Officer
Gilbreath then arrived and assisted in the search. Rain began to fall. Appellant was instructed
to drive the car into a sally port. The search continued.

 Lanau testified that after his fines were assessed, Trooper Bayless told him that he
could get permission to turn his car keys over to appellant. A jailer took him outside to see
appellant. Trooper Bayless remained inside. Lanau asked appellant to obtain money to pay his
fines, and gave appellant the car keys. Lanau stated that Trooper Bayless never asked him for
consent to search his car.

 Not all encounters between police and citizens invoke the protection of the Fourth
Amendment. Florida v. Royer, 460 U.S. 491, 497-98 (1983); Terry v. Ohio, 392 U.S. 1, 19 n.16
(1968); Mitchell v. State, 831 S.W.2d 829, 832 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd). 
Police officers are allowed just as much freedom as anyone to ask questions of fellow citizens. 
Daniels v. State, 718 S.W.2d 702, 704 (Tex. Crim. App. 1986), overruled on other grounds,
Juarez v. State, 758 S.W.2d 772, 780 n.3 (Tex. Crim. App. 1988); White v. State, 846 S.W.2d
427, 430 (Tex. App.--Houston [14th Dist.] 1990, no pet.). Law enforcement officers do not
violate the Fourth Amendment by merely approaching an individual on the street or other public
place, by asking him if he is willing to answer some questions, by putting questions to him if the
person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary
answers to such questions. Royer, 460 U.S. at 497. A seizure does not occur simply because a
police officer approaches an individual and asks a few questions. So long as a reasonable person
would feel free "to disregard the police and go about his business," California v. Hodari, 499
U.S. , 111 S.Ct. 1547, 1551 (1991), the encounter is consensual and no reasonable suspicion
is required. Florida v. Bostick, U.S. , 111 S.Ct. 2382, 2386 (1991). It is only when the
police questioning of a citizen becomes a detention that it must be supported by reasonable
suspicion. Terry, 392 U.S. at 19 n.16; Mitchell, 831 S.W.2d at 832.

 Under Terry, the police can stop and briefly detain a person for investigative
purposes if they have a reasonable suspicion supported by articulable facts that criminal activity
"may be afoot," even if they lack probable cause under the Fourth Amendment. Reasonable
suspicion entails some minimal level of objective justification for making a stop--that is, something
more than an inchoate and unparticularized suspicion or "hunch." That level of suspicion is
considerably less than proof of wrongdoing by a preponderance of evidence, and is obviously less
demanding than that for probable cause. United States v. Sokolow, 490 U.S. 1, 7 (1989). 

 The concept of reasonable suspicion, like probable cause, is "not readily, or even
usefully, reduced to a neat set of rules." Sokolow, 490 U.S. at 7; Illinois v. Gates, 462 U.S. 212,
232 (1983). In evaluating the validity of a stop, the totality of the circumstances--the whole
picture--must be considered. Sokolow, 490 U.S. at 7; United States v. Cortez, 449 U.S. 411, 417
(1981). The circumstances giving rise to a reasonable suspicion need not be criminal in
themselves; rather they could include any fact that increases the likelihood of criminal activity. 
Crockett v. State, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991). Mere suspicion is insufficient,
however, to justify a Terry stop. The facts must support a reasonable suspicion that some activity
out of the ordinary is occurring or has occurred, the suspect is connected with the suspicious
activity, and the suspicious activity is related to crime. Hoag v. State, 728 S.W.2d 375, 380
(Tex. Crim. App. 1987).

 In the instant case, appellant had been a passenger in a car that had been stopped
on the highway by the same officer in question. Appellant had been required to identify himself. 
He displayed a valid driver's license, but was detained by the officer while an outstanding arrest
warrant check was made on him. Trooper Bayless acknowledged that when he approached
appellant at the car near the sheriff's office, he knew that appellant had done nothing wrong, and
he had no previous information about appellant, the car, or its owner, concerning drugs and guns. 
He had only a "hunch." The officer did not seek consent from Lanau, the car's owner, to search
the car. He waited until the car keys had been given to appellant before approaching the
previously detained appellant and telling him, "Wait a minute." It was the Officer's avowed
purpose to interrogate appellant in an attempt to develop an inconsistency between Lanau's earlier
statements and appellant's responses to his questions in order that the car might be searched. 
Once an inconsistency developed about Lanau's employment, Trooper Bayless asked for consent
to search the car and received an "[o]kay" from appellant.

 The trial court, as the trier of fact, could have accepted the officer's version of
what occurred. There was nothing, however, to show that appellant was asked if he was willing
to answer questions, and the officer admitted that he did not tell appellant that appellant had the
right to leave. The record does not reflect that the twenty-four year old appellant, unversed in
constitutional law, knew that he had the right to leave, particularly when confronted by the same
officer who had detained him a short time before. There is nothing to show that appellant as a
reasonable person felt free to disregard the officer and "go about his business." It is obvious from
the testimony of the officer and appellant that the officer conveyed a message that compliance with
his instructions was required. Moreover, under the totality of the circumstances, we find that a
reasonable person in appellant's position would not have believed that he was free to ignore the
officer's request to search the car the possession of which he had just assumed, or to terminate
the encounter. Mitchell, 831 S.W.2d at 833; see also Holladay, 805 S.W.2d at 472 (holding that
the officer's request for permission to search the defendant's luggage converted the initial
encounter into an investigative one, implicating Fourth Amendment protection). Here, the initial
encounter easily slipped into an investigative detention. The evidence does not reflect a mere
police-citizen encounter.

 Was there, however, a valid basis for a brief Terry investigative stop or detention? 
As noted, a constitutionally valid investigative detention may be founded upon a reasonable
suspicion that the person detained is connected with criminal activity. Amores v. State, 816
S.W.2d 407, 411 (Tex. Crim. App. 1991). Specifically, the information that officers must have
to justify a Terry-type stop or detention is "specific articulable facts, which, in the light of their
experience and general knowledge, together with rational inferences from those facts, would
reasonably warrant [the] intrusion." Glass v. State, 681 S.W.2d 599, 601 (Tex. Crim. App.
1984). A detention based on a hunch or mere suspicion is insufficient for a Terry detention. 
Hoag, 728 S.W.2d at 380; Johnson, 658 S.W.2d at 626. When the events are as consistent with
innocent activity as with criminal activity, a detention based on those events is unlawful. 
Johnson, 658 S.W.2d at 626.

 The instant case is like Comer v. State, 754 S.W.2d 656 (Tex. Crim. App. 1986),
in which the seizure was held to violate the defendant's rights. There was no evidence that a
crime was involved. See also Viveros v. State, 799 S.W.2d 458, 460 (Tex. App.--Corpus Christi
1990), aff'd, 828 S.W.2d 2 (Tex. Crim. App. 1992). The officer did point to the fact that during
questioning, appellant became nervous, and a vein stood out in appellant's neck. Nervousness
when confronted by a police officer is as indicative of innocent activity as guilty activity. See
Holladay, 805 S.W.2d at 467; Glass, 681 S.W.2d at 602. At a minimum, the suspicious conduct
must differ sufficiently from that of innocent people under the same circumstances so as to clearly
set the suspect apart from them. Crockett v. State, 803 S.W.2d 308, 311 (Tex. Crim. App.
1991). At best, Trooper Bayless possessed only an inarticulable hunch or speculative suspicion
of wrongdoing. Glass, 681 S.W.2d at 601; Viveros, 799 S.W.2d at 460. Under the
circumstances presented, we hold that the detention here did not satisfy the test for an
investigative detention or stop. The instant detention was just the sort of fishing expedition the
Fourth Amendment and article one, section nine of the Texas Constitution were designed to
prohibit. See Armstrong v. State, 550 S.W.2d 25, 31 (Tex. Crim. App. 1977) (op. on rehearing).

 Notwithstanding an illegal arrest or detention, consent to search, freely and
voluntarily given, is still one of the recognized exceptions to the requirement of both a warrant
and probable cause for a valid search. Schneckloth v. Bustamante, 412 U.S. 218, 222 (1973);
Juarez v. State, 758 S.W.2d 772, 776 (Tex. Crim. App. 1988); Kolb v. State, 532 S.W.2d 87,
89 (Tex. Crim. App. 1976). Custody or detention is merely one of the factors to be considered. 
Meeks v. State, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985).

 The burden of proof is upon the State to show by clear and convincing evidence
that the consent was freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548
(1968). Without such evidence the consent is not considered effective. Johnson v. State, 803
S.W.2d 272, 286 (Tex. Crim. App. 1990), cert. denied, 111 S.Ct. 2914 (1991). The burden of
proving that the consent was freely and voluntarily given cannot be discharged by showing no
more than an acquiescence to a claim of lawful authority. Bumper, 391 U.S. at 548-49; Reyes v.
State,741 S.W.2d 414, 430 (Tex. Crim. App. 1987). The consent must be positive and
unequivocal, and the police must not have employed duress or coercion, actual or implied, in
obtaining permission to search. Reyes, 741 S.W.2d at 430; Meeks, 692 S.W.2d at 509. Consent
must not be physically or psychologically coerced. Paprskar v. State, 484 S.W.2d 731, 737 (Tex.
Crim. App. 1972). Whether a consent to a search was in fact voluntary is a question of fact to
be determined from "the totality of the circumstances." Schneckloth, 412 U.S. at 227; Juarez,
758 S.W.2d at 775; Dickey v. State, 716 S.W.2d 499, 504 (Tex. Crim. App. 1986).

 While an illegal arrest, detention, or stop does not automatically invalidate a
consent to search, neither will a voluntary consent automatically validate a search which follows
an illegal arrest, detention, or stop. Juarez, 758 S.W.2d at 779. If the consent to search is found
to have been voluntarily given, that is only one step in the determination of the propriety of the
search. The consent may have been obtained by the exploitation of an illegal arrest or detention. 
Id. at 778. The question then becomes whether the consent to search was obtained by the
exploitation of an illegal arrest or detention or "by means sufficiently distinguishable to be purged
of the primary taint." Brown v. Illinois, 422 U.S. 590, 599 (1975 quoting Wong Sun v. United
States, 371 U.S. 471, 487-88 (1963)).

 In Brown, a confession case, the Supreme Court identified the following factors to
be considered in determining whether a confession given following an illegal arrest is sufficiently
attenuated to permit the use of the confession at trial. These factors are: (1) whether Miranda (2)
warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence
of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. In
Juarez, the Court of Criminal Appeals applied the Brown factors to a consent to search case. (3) 758
S.W.2d at 780; see also Subia v. State, 836 S.W.2d 711, 714-15 (Tex. App.--El Paso 1992, no
pet.). 

 Applying these factors, we find that no Miranda warnings were given to appellant. 
In fact, there is no showing that appellant was even informed that he had a right to refuse to
consent to a search. While a warning that an individual does not have to consent to a search is
not required or essential to the validity of a voluntary consent, the lack of any warning is
probative on the issue of voluntariness. Meeks, 692 S.W.2d at 510. The lack of any warning
here was clearly probative when appellant had just received the car keys and apparent "common
authority" over the car just prior to the alleged consent.

 The second factor is the temporal proximity of the detention and the consent to
search. The exact time is not revealed by the record, but it appears that the consent followed
"hard on the heels" of the illegal detention. The second factor is based on the reasoning that the
shorter the time, the more likely the taint of the illegal arrest or stop has not been purged. Juarez,
758 S.W.2d at 781.

 The third factor is the presence of intervening circumstances. We find none. The
State made no showing as to the third factor. 

 The fourth factor is the purpose and flagrancy of the official misconduct. The court
in Brown gave this factor particular emphasis. Juarez, 758 S.W.2d at 782. Without reiterating
the evidence, it is clear from the officer's own testimony that his encounter with and detention of
appellant had a "quality of purposefulness" and was an "expedition for evidence" admittedly
undertaken "in the hope that something might turn up." Brown, 422 U.S. at 605; Juarez, 758
S.W.2d at 783. All four factors fall on appellant's side of the ledger.

 The evidence as to the oral consent came solely from Trooper Bayless. The
evidence was meager and understandably so because it was developed by appellant's counsel on
direct examination. The prosecutor asked no questions at all of Trooper Bayless. Given the
circumstances, we find that the State, relying upon the evidence developed, did not sustain its
burden of proof of showing by clear and convincing evidence that the consent was freely and
voluntarily given. If it can be argued otherwise, we conclude that the consent to search as a
matter of law was obtained by the exploitation of an illegal detention, and was not shown by the
State to have been obtained by means sufficiently distinguishable to be purged of the primary taint. 
The trial court erred in failing to suppress the evidence. Tex. Code Crim. Proc. Ann. art. 38.23
(West Supp. 1994); Viveros, 799 S.W.2d at 460. Appellant's two points of error are sustained.


 The order deferring adjudication of guilt is reversed and the cause is remanded to
the trial court for further proceedings consistent with this opinion.



 

 John F. Onion, Jr., Justice

Before Justices Kidd, B. A. Smith and Onion*

Reversed and Remanded

Filed: April 13, 1994

Publish
































* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988). 
1. We presume from the appellate record that the plea of guilty was to the first count of the
indictment.
2. Miranda v. Arizona, 384 U.S. 436 (1966).
3. See also Boyle v. State, 820 S.W.2d 122, 132 n.10 (Tex. Crim. App. 1989) (opinion on
original submission); Brick v. State, 738 S.W.2d 676, 680 (Tex. Crim. App. 1987).