**Bernard Debaugh HOWARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–93–258–CR.**

Court of Appeals of Texas,
Waco.

Nov. 9, 1994.

Discretionary Review Refused
Feb. 15, 1995.

---

Kathryn J. Gilliam, Waco, for appellant.

John W. Segrest, Crim. Dist. Atty., Susan N. Kelly, Juanita Fielden, Asst. Dist. Attys., Waco, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Appellant was charged in the same indictment with two counts of possession of less than twenty-eight grams of cocaine. Both counts were joined for trial. Appellant was found guilty by a jury on only the second count. Appellant appealed the judgment.

Appellant alleges seven points of error on appeal: first, the trial court committed reversible error in denying his motion for severance; second, the trial court erred in permitting joinder of appellant's multiple offenses because appellant was prejudiced by the joinder; third, the trial court committed reversible error when it failed to force the state to elect only one charge against appellant with which to proceed at trial; fourth, appellant was unlawfully arrested and the evidence used against him was unlawfully

seized; fifth, the trial court committed reversible error when it refused appellant's specially requested charge to the jury on the legality of his arrest; sixth, the prosecution committed reversible error by striking at appellant over his counsel's shoulders; and seventh, the evidence was insufficient to prove that appellant exercised dominion and control over the cocaine which he was accused of possessing. We affirm.

## I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT'S MOTION FOR SEVERANCE UNDER § 3.04 OF THE TEXAS PENAL CODE

■ Appellant argues a mandatory reversal is required in the instant case because the trial court denied his motion for severance.

Under the authority of § 481.132 of the Health and Safety Code, TEX. HEALTH & SAFETY CODE ANN. § 481.132 (Vernon 1992), the trial court joined for trial two separate charges of possession of less than twenty-eight grams of cocaine, both of which were charged in the same indictment, that resulted from two separate incidents approximately two weeks apart. Appellant asserts that article 21.24 of the Code of Criminal Procedure, TEX.CODE CRIM.PROC.ANN. art. 21.24 (Vernon 1989), is the only statutory provision in Texas

law that authorizes the joinder in the same indictment of multiple criminal offenses and, as article 21.24 only permits joinder when the offenses being joined are property offenses, the trial court exceeded its statutory authority in allowing the joinder of multiple possession of cocaine offenses in the same indictment.[1]

Appellant raises two questions in his first point of error; (1) whether article 21.24, indeed, is the sole statutory provision in Texas to allow the joinder of multiple offenses alleged in the same indictment or whether § 481.132 allows the joinder in the same indictment of multiple drug offenses found in chapter 481 of the Health and Safety Code, TEX. HEALTH & SAFETY CODE ANN. chapter 481 (Vernon 1992) & (Vernon Supp.1994), and (2) whether § 3.04 of the Penal Code, TEX. PENAL CODE ANN. § 3.04 (Vernon 1974), establishing a statutory right in the defendant to a severance, applies where the trial court has joined offenses under § 481.132 instead of article 21.24.[2]

The Fort Worth Court of Appeals recently examined the provisions of § 481.132 to determine whether it allows the joinder at trial of multiple chapter 481 drug offenses alleged in the same indictment. *Watson v. State*, 877 S.W.2d 826, 828 (Tex.App.—Fort Worth 1994, pet. granted).[3] The court reasoned

---

1. Article 21.24 of the Code of Criminal Procedure provides: "Two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offenses arise out of the same criminal episode, as defined in Chapter 3 of the Penal Code." TEX.CODE CRIM.PROC.ANN. art. 21.24 (Vernon 1989).

Chapter 3 of the Penal Code establishes that "[a] defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." TEX.PENAL CODE ANN. § 3.02 (Vernon 1974). Section 3.01 of the Penal Code provides:

In this chapter, "criminal episode" means the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:
(1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or
(2) the offenses are the repeated commission of the same or similar offenses.
TEX.PENAL CODE ANN. § 3.01 (Vernon Supp.1994).

2. Section 3.04 of the Penal Code provides that "[w]henever two or more offenses have been consolidated or joined for trial under Section 3.02 of this [penal] code, the defendant shall have a right to a severance of the offenses." TEX.PENAL CODE ANN. § 3.04 (Vernon 1974).

3. Section 481.132 provides, in relevant part:

(a) In this section, "criminal episode" means the commission of two or more offenses under this chapter under the following circumstances:
(1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme, plan, or continuing course of conduct; or
(2) the offenses are the repeated commission of the same or similar offenses.
(b) A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode. If a single criminal action is based on more than one charging instrument within the jurisdiction of the trial court, not later than the 30th day before the

that because § 481.132(f) provides that § 481.132 is the exclusive method for the joinder of chapter 481 drug offenses; § 481.132(b) permits the prosecution of a defendant in a single criminal action for all offenses arising out of the same criminal episode, which may mean two separate incidents involving the same criminal conduct; and § 481.132(b) requires the State to file notice of joinder at least 30 days before trial if the single criminal action is based on more than one charging instrument, § 481.132 must provide for the joinder of multiple offenses under one single indictment. *Id.* We agree.[4]

■ Notwithstanding the exclusivity of § 481.132, appellant asserts that he is entitled to a severance as a matter of right under § 3.04. Appellant's argument, however, is without merit as § 481.132 and § 3.04 are not in *pari materia* and, therefore, are exclusive of each other. *See Cheney v. State,* 755 S.W.2d 123, 127–131 (Tex.Crim.App.1988) (statutes that are not in *pari materia* are exclusive of each other and should be read independently). Because § 481.132(f) provides that § 481.132 is the exclusive method for consolidation and joinder of chapter 481 drug offenses, we find any other statutory provisions relating to joinder besides § 481.132 to have no bearing upon the instant case. *See id.*[5]

As we conclude § 481.132 allows the joinder at trial of multiple chapter 481 drug offenses in the same indictment and that § 3.04 does not provide defendants with a right to severance when the offenses being joined are drug offenses as provided in chapter 481 of the Health and Safety Code, we overrule appellant's first point of error.

## II. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR SEVERANCE BECAUSE APPELLANT WAS PREJUDICED BY THE JOINDER OF TWO SEPARATE CHARGES OF THE POSSESSION OF COCAINE

■ Appellant asserts the trial court committed reversible error in not severing the two counts of possession of cocaine as appellant had requested because appellant was prejudiced by the joinder. Section 481.132(e) provides that "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses, the court may order separate trials of the offenses or provide other relief as justice requires." TEX. HEALTH & SAFETY CODE ANN. § 481.132(e) (Vernon 1992). No case law currently exists specifically addressing the issue of the proper standard of review under § 481.132(e). Appellant, accordingly, urges us to engage in a harm analysis automatically whenever a trial court joins multiple criminal charges under § 481.132. We, however, believe that an appellate court should not engage in a harm analysis of a trial court's decision under § 481.132(e) until the appellate court first determines that the trial court erred in permitting the joinder of multiple offenses under § 481.132. *See Ponder v. State,* 745 S.W.2d 372, 373–374 (Tex. Crim.App.1988) (stating that when an appellant alleges trial court error in permitting joinder, a harm analysis should not be undertaken until the appellate court first determines that an error was actually committed).

■ The question of what standard of review is appropriate when a trial court denies a defendant's request for severance under § 481.132(e) is thus raised. Section 481.132(e) leaves the decision to the discretion of the trial judge whether joinder should

---

date of the trial, the state shall file written notice of the action.

. . . . .

(f) This section provides the exclusive method for consolidation and joinder of prosecutions for offenses under this chapter ...

TEX. HEALTH & SAFETY CODE ANN. §§ 481.121(a), (b), (f) (Vernon 1992).

**4.** As we find § 481.132 provides for the joinder of multiple chapter 481 drug offenses in a single indictment, we need not consider appellant's as-

sertion that article 21.24 applies only to property offenses.

**5.** Appellant argues the Court of Criminal Appeals in *Warmowski v. State,* 853 S.W.2d 575 (Tex. Crim.App.1993), decided that a severance is required when a defendant requests one after multiple drug offenses have been joined for trial. *Warmowski,* however, addressed the joinder at trial of offenses under § 3.02. Appellant, on the other hand, had his multiple drug charges joined at trial under § 481.132.

not be allowed due to prejudice either to the state or to the defendant; therefore, we find that an abuse of discretion standard of review is appropriate. *See Harvey v. State,* 821 S.W.2d 389, 392 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) (holding the appropriate standard of review for a trial court's decision in a matter left statutorily to the discretion of the trial court is abuse of discretion).

 We cannot find the trial court abused its discretion in denying appellant's request for a severance. Section 481.132(a)(2) authorizes a trial court to join multiple offenses if they are the "repeated commission of the same or similar offenses." TEX. HEALTH & SAFETY CODE ANN. § 481.132(a)(2) (Vernon 1992). Appellant was indicted on October 21, 1992, on two separate charges for the exact same type of criminal conduct, to-wit, the knowing possession of less than twenty-eight grams of cocaine. The indictment alleged that these two offenses occurred within two weeks of each other. No other evidence exists in the record to suggest that the trial court abused its discretion in not finding that appellant was prejudiced by the joinder of these two charges for the possession of cocaine. With the offenses for which appellant was indicted fitting squarely within the provisions of § 481.132(e) and without any other evidence that appellant was prejudiced by the trial court's joinder of these two charges of the possession of cocaine, we find the trial court did not abuse its discretion in denying appellant's request for severance under § 481.132(e). As we find the trial court did not abuse its discretion in denying appellant's motion for severance, we find the trial court did not err in denying the severance. Accordingly, appellant's seventh point of error is overruled.

III. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO FORCE THE STATE TO ELECT WHICH COUNT IN APPELLANT'S INDICTMENT UPON WHICH IT WOULD PROCEED PRIOR TO SUBMITTING THE CASE TO THE JURY

 Appellant contends the trial court erred in failing to force the state to elect

which of the two counts of the possession of cocaine upon which it would proceed before submitting the case to the jury. However, as we held above that appellant's two counts of the possession of cocaine were properly joined, appellant's second point of error is overruled.

IV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO SUPPRESS EVIDENCE SEIZED BY POLICE OFFICERS PURSUANT TO THE WARRANTLESS, ILLEGAL ARREST OF APPELLANT

Appellant argues the trial court erred in overruling his motion to suppress the crack cocaine attributed to appellant because both the stop of the automobile in which appellant was riding was unlawful and the subsequent arrest of appellant was unlawful.

Appellant asserts the police officers' stop of the automobile in which he was riding was unlawful because the officers had no suspicion of criminal activity on the part of anyone in it or evident on the automobile. We disagree.

 "The standard of review for reviewing a trial court's decision denying a defendant's motion to suppress evidence is that the evidence should be viewed in the light most favorable to the trial court's ruling." *Mitchell v. State,* 831 S.W.2d 829, 831 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). The trial judge is the sole judge of the credibility of the witnesses who have offered evidence on the facts underlying the motion and of the weight to be given to their testimony. *Id.* The judge may believe or disbelieve all or any part of the witness' testimony, and his findings will not be disturbed absent a clear abuse of discretion. *Id.* Accordingly, we find the trial court impliedly made the following findings of fact in overruling appellant's motion to suppress.

Around 2:00 in the morning on August 2, 1992, Officers Steven January and John Kinlaw of the Waco Police Department were called to check out a complaint of loud music at the Playmate Club in Waco. When they

arrived, they discovered the music emanating from the bar not to be loud, but they did find several automobiles illegally parked. As they attempted to locate the individual owners of the illegally parked vehicles, an unidentified black woman notified them that appellant had told her earlier a warrant was outstanding for his arrest. The officers decided to run appellant's name through the city, county, and state computer systems at the police department to determine if this woman's assertions were true. Before they received any response, appellant got into a Cadillac and left the bar. Officers January and Kinlaw followed the Cadillac in their respective vehicles. Appellant eventually exited the Cadillac and got into a white Oldsmobile.

Still awaiting a response from the computer systems, the officers began to follow the Oldsmobile. They followed the Oldsmobile for some distance until it began to approach the city limits. At this point, Officer Kinlaw noticed the Oldsmobile, which was driven by William Hudlin, had a defective taillight and appeared to be missing a license plate. Officer Kinlaw, still waiting for a response from the computer systems, wanted to stop the Oldsmobile before it left his jurisdiction both to investigate the apparent traffic violations he had witnessed and to question appellant about any possible outstanding warrants for his arrest. Consequently, Officer Kinlaw stopped the Oldsmobile.

After the stop was made, Officer Kinlaw approached Mr. Hudlin and Mr. Hudlin gave his name to Officer Kinlaw. At this same time, Officer January asked appellant for his name. Appellant said his name was Danny Ray Valentine. Appellant, seated in the passenger side of the back seat, then began to try to force himself out of the Oldsmobile despite instructions from Officers January and Kinlaw not to do so. While appellant was trying to get out of the back seat, both officers witnessed appellant reach into his front left shirt pocket with his left hand and make a throwing motion toward the driver's side of the back seat. Appellant, while in the back seat, also looked furtively around him, appeared nervous, and was making some motions with his hands behind his back. Based

upon these circumstances, along with the information provided to the officers by the unidentified black woman, they, believing themselves to be in possible danger, decided to search appellant for weapons.

Once appellant was removed from the Oldsmobile, Officer January searched the driver's side of the back seat and found a ball wrapped in brown paper. Upon examination of this ball, Officer Kinlaw determined that it contained crack cocaine. The officers then arrested appellant for the possession of cocaine.

■ Before considering the trial court's finding that the stop of the automobile in which appellant was riding was lawful, we note that appellant had standing to contest the lawfulness of this stop. *See United States v. Roberson,* 6 F.3d 1088, 1091 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1322, 127 L.Ed.2d 671 (1994) (holding that passengers in motor vehicles have standing to contest the initial stop of the motor vehicle in which they are riding notwithstanding any possessory interest of the passenger in the motor vehicle or its contents); *United States v. Erwin,* 875 F.2d 268, 269–270 (10th Cir.1989) (same).

■ The stop of Mr. Hudlin's Oldsmobile was lawful provided the officers had reasonable suspicion of a traffic violation either on the automobile or by one of the automobile's occupants. *Hernandez v. State,* 867 S.W.2d 900, 907–908 (Tex.App.—Texarkana 1993, no pet.); *Vercher v. State,* 861 S.W.2d 68, 71–73 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd).

The officers noticed, prior to stopping Mr. Hudlin's automobile, that the automobile had a broken taillight and appeared to be missing a license plate. The officers only needed reasonable suspicion of either infraction to stop the automobile lawfully. We will only consider the defective taillight.

The taillight was broken in such a manner that the light emitted from the taillight was white. Texas law requires automobile taillights to emit a red light. TEX.REV.CIV.STAT. ANN. art. 6701d, § 111 (Vernon 1987). As the police officers noticed that one of the taillights on Mr. Hudlin's automobile was not

emitting a red light and as one of the reasons for the police officers' decision to stop the automobile was because of this motor vehicle violation, we conclude sufficient evidence exists to support the trial court's finding that the officers had reasonable suspicion of a traffic violation before stopping the Oldsmobile. *See Vicknair v. State*, 751 S.W.2d 180 (Tex.Crim.App.1988) (on rehearing).[6]

■ In the alternative, appellant argues that the stop of Mr. Hudlin's automobile was unlawful because it was pretextual. While he concedes pretextual stops do not offend the United States Constitution, he argues they are prohibited by the Texas Constitution. *See* TEX.CONST. art. I, § 9. Officer Kinlaw testified that he stopped the Oldsmobile both because of the suspected traffic violations and because he wanted to speak to appellant. While the record indicates that the officers initially followed Mr. Hudlin's automobile only because they wanted to talk to appellant, Mr. Hudlin was not stopped until Officer Hudlin noticed the traffic violations. Indeed, Officer Kinlaw testified that when the automobile was first stopped appellant would have been allowed to leave the vehicle unmolested because he and Officer January lacked the reasonable suspicion they would have needed to detain him for questioning. The **only** reasonable suspicion the officers had of any criminal activity at the time of the stop was of the traffic violations on the Oldsmobile. Accordingly, we find that the court could have made an implied finding that the stop was not pretextual.

■ Appellant argues, in the event the stop of the automobile was lawful, the subse-

quent arrest of appellant was unlawful because the police officers had no warrant. We disagree.

"[A]n occupant of an automobile is just as subject to a reasonable stop and to a reasonable frisk as is a pedestrian." *Wood v. State*, 515 S.W.2d 300, 306 (Tex.Crim.App.1974). Officers January and Kinlaw had at least the minimum amount of suspicion necessary to conduct an investigatory search of appellant. The officers had received information that a warrant was outstanding for his arrest; appellant seemed nervous and was looking furtively around him; and he was making motions with his hands behind his back. Accordingly, we agree with the trial court that the investigatory stop and search of appellant was lawful. *See id.; see also Gearing v. State*, 685 S.W.2d 326, 327–329 (Tex.Crim. App.1985); *Tardiff v. State*, 548 S.W.2d 380, 383 (Tex.Crim.App.1977).

■ Now that we have determined the initial detention of appellant for investigatory purposes was justified, we need to address the issue concerning the legality of his subsequent arrest for the possession of cocaine.

A police officer "may arrest an offender without a warrant for any offense in his presence or within his view." TEX.CODE CRIM.PROC.ANN. art. 14.01(b) (Vernon 1977); *see also Cofield v. State*, 857 S.W.2d 798, 802–803 (Tex.App.—Corpus Christi 1993, pet. granted). While appellant was being temporarily detained, the officers watched appellant reach into his shirt pocket with his left hand and make a throwing motion. When the officers investigated to see what he may

---

**6.** Appellant argues that the reasoning by the Court of Criminal Appeals in *Vicknair v. State*, 751 S.W.2d 180 (Tex.Crim.App.1988) (on rehearing), requires a decision by this Court that the stop of the automobile in which appellant was riding was unlawful because the police officers did not have any reason to believe the automobile was not in compliance with TEX.REV.CIV.STAT. ANN. art. 6701d, § 111 (Vernon 1987). The facts in *Vicknair* are readily distinguishable from those in the instant case. In *Vicknair*, one of the taillights on the automobile that was stopped had a cracked taillight which cause both a white light, from the bulb inside the taillight, and a red light, as a result of the white light from the bulb passing through the red covering of the taillight,

to be emitted from the taillight in question. *See id.* at 187. The *Vicknair* court found that as at least some red light was emitted from the taillight of the motor vehicle in question, the motor vehicle was in compliance with § 111, meaning that the police officer could not then have stopped the defendant's motor vehicle under a theory that the motor vehicle was not in accordance with § 111. In the instant case, however, the whole red covering, aside from a few pieces, of the taillight was missing, causing only a white light to be emitted from the taillight. As the motor vehicle in the instant case was not in compliance with § 111, the trial court correctly concluded that the officers lawfully stopped the motor vehicle containing appellant.

have thrown, they found a small ball of co-caine. Therefore, we find the evidence in the record supports the court's implied finding that a warrant was unnecessary because appellant's unlawful possession of cocaine took place in the presence of Officers January and Kinlaw and in their view. *See Cofield,* 857 S.W.2d at 802–803.

■ Appellant argues in the alternative that the cocaine seized should be suppressed because Officer January's search of the back-seat was unlawful. Appellant, however, lacks standing to contest the search of Mr. Hud-lin's automobile. *Metoyer v. State,* 860 S.W.2d 673, 677 (Tex.App.—Fort Worth 1993, pet. ref'd.) (A passenger in a motor vehicle does not have standing when he fails to assert a possessory interest in the vehicle or the property seized.)

As we find that the Oldsmobile was lawfully stopped, that appellant was lawfully arrested, and that appellant has no standing to contest the seizure of the cocaine, appellant's third point of error is overruled.

## V. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED APPELLANT'S SPECIALLY REQUESTED CHARGE TO THE JURY ON THE LEGALITY OF HIS WARRANTLESS ARREST

■ Appellant contends the trial court erred in refusing his special requested charge on probable cause to arrest. Article 38.23(a) of the Code of Criminal Procedure provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted into evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the [defendant's protections against illegal searches and seizures], then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.1994).

At the close of the evidence, appellant's attorney at trial objected and asked the court to submit to the jury an instruction on probable cause that:

> the arrest or search with regard to both of these cases is unlawful unless attended by probable cause to make such search or arrest, and that if the jury has reasonable doubt as to the legality of the search that they should acquit the Defendant.

The State argues that, because the record did not raise a fact issue on unlawfully obtained evidence, the court properly denied appellant's specially requested charge. *See Myre v. State,* 545 S.W.2d 820, 825 (Tex. Crim.App.1977). "The trial court must instruct the jury to disregard evidence obtained illegally if the defendant requests the instruction and raises a fact issue concerning the manner in which the evidence was obtained." *Sendejo v. State,* 841 S.W.2d 856, 859 (Tex.App.—Corpus Christi 1992, no pet.) (*citing Thomas v. State,* 723 S.W.2d 696, 707 (Tex.Crim.App.1986)). Stated conversely, if there are no factual issues raised concerning the manner in which the evidence was seized, the defense is entitled to no such instruction. *See Sendejo,* 841 S.W.2d at 859.

With regard to the stop of Mr. Hudlin's automobile, no factual issue was raised at trial concerning the manner in which Mr. Hudlin's automobile was stopped. Appellant offered no evidence on the facts underlying the stop and, therefore, did not controvert the testimony of Officers January and Kinlaw that they stopped Mr. Hudlin's automobile because, among other things, one of its tail-lights was defective under § 111. *See id.; see also Hewitt v. State,* 734 S.W.2d 745, 750 (Tex.App.—Fort Worth 1987, pet. ref'd). No other evidence was presented at trial on the lawfulness of the stop of Mr. Hudlin's automobile. As the uncontroverted testimony from Officers January and Kinlaw can only indicate that Officers January and Kinlaw lawfully stopped Mr. Hudlin's motor vehicle, we find no factual issue was raised by appellant concerning the lawfulness of the stop of Mr. Hudlin's motor vehicle.

With reference to the actual seizure of the cocaine, appellant lacked standing to contest the lawfulness of the cocaine's seizure and, therefore, was entitled to no jury instruction on that issue.

As we find no factual issues were raised concerning the lawfulness of the seizure of the cocaine, we overrule appellant's fourth point of error.

## VI. WHETHER THE PROSECUTION COMMITTED REVERSIBLE ERROR BY STRIKING AT APPELLANT OVER THE SHOULDERS OF HIS DEFENSE ATTORNEY DURING ARGUMENT TO THE JURY

Appellant asserts the prosecution committed reversible error by striking at appellant over the shoulders of his counsel during argument to the jury by criticizing counsel for being "suave."

During the State's final argument at the guilt-innocence phase of the trial, the following occurred:

MS. KELLY (prosecutor): Mr. Roberts (defense counsel) is suave. He doesn't want me to come up and tell you these things.

MR. ROBERTS: Your Honor, I object to the personal attack by counsel on me.

COURT: Sustain the objection. Instruct the jury to disregard the last statement of counsel for any purpose whatsoever.

Derogatory comments by the prosecution about defense counsel are improper. *Fuentes v. State*, 664 S.W.2d 333, 336–337 (Tex.Crim.App.1984). We find the prosecution's reference to defense counsel as "suave" to be improper. However, improper comments by the prosecution about defense counsel will not amount to reversible error unless, "in light of the record as a whole, there is a reasonable possibility the argument complained of might have contributed to appellant's conviction or punishment." *Orona v. State*, 791 S.W.2d 125, 128 (Tex.Crim.App.1990); TEX.R.APP.P. 81(b)(2).

There is no reasonable possibility that the prosecution's reference to defense counsel as "suave" contributed to his conviction or punishment. The word used by the prosecution, "suave," is not so inflammatory or prejudicial that it would cause either appellant or his counsel to be prejudiced by a reasonable juror. Furthermore, the trial court sustained defense counsel's objection to the comment once it was made and instructed the jury to disregard the comment for all purposes. *See Ramos v. State*, 767 S.W.2d 248, 252 (Tex.App.—Corpus Christi 1989, pet. ref'd) (any harm that may have occurred by an accusation by prosecution that defense counsel is playing on the jury's sympathy would be cured by an instruction to disregard); *see also Orona*, 791 S.W.2d at 129–130 (statement by prosecution that defense counsel was adept at getting criminal defendants "off the hook" did not contribute to conviction). As we find there is no reasonable possibility that the prosecution's reference to defense counsel as "suave" contributed to appellant's conviction, we overrule his fifth point of error.

## VII. WHETHER THE EVIDENCE WAS INSUFFICIENT TO PROVE THAT APPELLANT POSSESSED THE COCAINE WHICH HE WAS ACCUSED OF POSSESSING

Appellant asserts the cocaine confiscated by the police following appellant's arrest was insufficient to support his conviction because the state failed to link appellant to the cocaine affirmatively. We disagree.

For us to find the cocaine found by Officer January to have been in the possession of appellant, the evidence must affirmatively link appellant to the cocaine in such a manner and to such an extent that a reasonable inference arises that he knew of the cocaine's existence and that he exercised dominion and control over it. *See Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App.1988); *Dubry v. State*, 582 S.W.2d 841, 843 (Tex.Crim.App. 1979).

In reviewing the jury's implied finding that appellant did exercise dominion and control over this cocaine, we will affirm the jury's conclusions if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *See Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim. App.1989); *(quoting Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979)).

Once Officers January and Kinlaw stopped Mr. Hudlin's automobile, both of these police officers witnessed appellant, while seated in the passenger side of the backseat, reach into his left shirt pocket with his left hand and then make a throwing motion toward the driver side of the backseat. Officer January then examined the driver side of the backseat to see what, if anything, appellant might have thrown there. Officer January found a small ball wrapped in brown paper. Officer Kinlaw, after being handed the small ball by Officer January, unwrapped the small ball, finding crack cocaine contained therein. Appellant was then arrested by these two officers for, among other things, the possession of cocaine.

Based upon these facts in evidence, we find that a rational trier of fact could find beyond a reasonable doubt that appellant exercised dominion and control over the cocaine. *See Butler,* 769 S.W.2d at 239. Accordingly, appellant's sixth point of error is overruled.

## VIII. CONCLUSIONS

As all of appellant's points of error are overruled, we affirm appellant's conviction in all respects.