**Billy Joe SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42288.**

Court of Criminal Appeals of Texas.

Nov. 12, 1969.

———◆———

John B. Patrick, Houston, for appellant.

Carol S. Vance, Dist. Atty., William W. Burge and J. Robert Musslewhite, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

BELCHER, Judge.

## OPINION

The offense is murder; the punishment, life.

The first four grounds of error presented by appellant's brief are as follows:

"The Appellant urges his Points of Error No. One, Two, Three and Four in part upon the basis that the State failed to prove the corpus delicti of the offense alleged in the Indictment by its failure to produce evidence that the alleged Deceased, Roberta Thornton, is in fact deceased and as the result of any act by this Appellant or by any other cause. The only evidence offered by the State of this essential element of the offense of murder with malice was through the testimony of Dr. Robert Bucklin, Associate Medical Examiner for Harris County, Texas."

Specifically, appellant contends that there is a fatal variance between the allegations in the indictment and the proof offered by the state concerning the identity of the deceased; and that the evidence is insufficient to support the conviction.

The indictment alleged that appellant killed "Roberta Thornton."

Officer West of the Houston Police Department testified that on October 5, 1967, at approximately 7:45 p. m., he arrived at 2706 Canfield Street, Houston, Texas, where he discovered the body of the deceased in the southeast bedroom of the house.

Idella Smith testified that the deceased, Roberta Thornton Jackson, was her daughter and that she was at her (Smith's) home at 2706 Canfield at the time of the shooting, October 5, 1967. On the evening of October 5, 1967, she was ironing in the living room of her home when she heard a noise at her back door and saw the appellant, whom she had known for three or four years and with whom Roberta Thornton had been living, barefooted, tiptoeing across the back porch going to the kitchen with a pistol and something else in his right hand. She then told Roberta, who was in the bedroom combing her hair in front of the mirror, to run saying, "There come Billy with a gun in his hand," and the appellant then started shooting. Idella Smith ran out of the house to her sister's house next door. Idella made a courtroom identification of the appellant, Billy Joe Smith, as the person who came in her house with the pistol. Idella Smith further testified that her daughter was named Roberta Jackson at birth, but she chose to go by Roberta Thornton.

Burnis Smith (No relation to Billy Joe or Idella Smith) testified that on the evening of October 5, 1967, he heard a gunshot, and then went to the house at 2706 Canfield where he looked through a window and saw the appellant, Billy Joe Smith, bring Roberta Thornton back into the bedroom. The appellant had her by the arm, and she was trying to get loose. She fell across a chair, and Burnis Smith saw the appellant shoot her, cut her face with a knife, and shoot her again and then she fell to the floor where the appellant shot her the third time. The appellant then left the house and went out the back door.

Dorothy Adams, aunt of the deceased, testified that she lived at 2704 Canfield on October 5, 1967, next door to where the deceased lived, and that on that day she heard shots, saw Roberta's mother run up to the porch and heard her say that Billy had shot Roberta. Mrs. Adams then testified she saw the appellant come out of Roberta's back door with a pistol in each hand, then she went out her front door to Roberta's house where she found Roberta on the floor bleeding from her body.

Dr. Robert Bucklin, associate medical examiner of Harris County, testified that

on October 6, 1967, he performed an autopsy on the deceased, Roberta Jackson, and that there were three entrance type gunshot wounds on the body and a total of twenty-eight cutting and stabbing wounds on the body and that in his opinion the cause of death was the gunshot wound of the abdomen.

On cross-examination, Dr. Bucklin testified that when he performed the autopsy on Roberta Jackson that there was a tag on the great toe of the deceased with the name Roberta Thornton Jackson written on it.

The deceased's sister, Ethel Mae Tea, testified that she knew the deceased as both Roberta Jackson and Roberta Thornton, and as to how she came to use the name Thornton,

"A Well, she used it when she and I— When she first used it, she was going with a boy named Thornton, and she got sick while she was going with him. And he carried her to the hospital and he registered her in the hospital with his last name and her first name. She got a hospital card by that name, and she started using that name."

Mrs. Tea also read a hospital card from Ben Taub Hospital that she had in her possession, "It says, Thornton, Roberta, female, * * *." Mrs. Tea further testified that the deceased had used the name Roberta Thornton at the city jail when Mrs. Tea and the deceased went over there to file charges on the appellant when, "he had jumped on her and he had stole some TVs. And he had left one up at the house, and she went up and got it and turned them in." Mrs. Tea further testified as follows:

"A He (appellant) come to my house and knocked on my door and I said, 'Who is it?' And he said, 'Billy,' and he asked me where Roberta was. And I said, 'What do you want with her?' And he said, 'When I find her, I am going to kill her.' And I said, 'Why?' And he said, 'Because she turned me in for those TVs I got.'"

The evidence is sufficient to show that the deceased was known as both Roberta Jackson and Roberta Thornton. When the deceased in a murder prosecution has gone by two names and the indictment refers to one and certain evidence refers to the other, the variance between the indictment and the proof is immaterial. Article 21.07, V.A.C.C.P.; Pena v. State, 144 Tex.Cr.R. 521, 164 S.W.2d 703; Johnson v. State, Tex.Cr.App., 384 S.W.2d 885.

The evidence is sufficient to warrant the finding that the appellant killed Roberta Thornton as alleged and supports the conviction.

Appellant's grounds of error one through four are overruled.

█ Appellant contends in his fifth ground of error that the court erred "by entering its judgment therein when counsel for the appellant was not afforded proper time in which to prepare for trial."

The record reflects that Howell Stone and Ruben Hope, Jr., were appointed to represent the appellant on February 14, 1968, that Ruben Hope, Jr., appeared with the appellant for arraignment on March 28, 1968, and that on the date of the trial, September 30, 1968, Howell Stone and Roger Knight, Jr., appeared for the appellant. The record does not reflect that Roger Knight, Jr., was court appointed. The record further reflects that Howell Stone conducted the appellant's defense; and was present when sentence was pronounced and notice of appeal given. After the judgment and sentence, Stone filed a motion to withdraw, and he was released. On October 21, 1968, the date Stone was released, the court appointed John B. Patrick to represent the appellant on appeal, and he has filed a brief in this case.

The appellant's ground of error number five is overruled.

The judgment is affirmed.