**Leo Martinez RAMOS, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–84–140–CR.**

Court of Appeals of Texas,
Corpus Christi.

Jan. 24, 1985.

John H. Flinn, Sinton, for appellant.

Thomas L. Bridges, Dist. Atty., Sinton, for appellee.

Before NYE, C.J., and SEERDEN and BENAVIDES, JJ.

## OPINION

SEERDEN, Justice.

Appellant was convicted of voluntary manslaughter following a jury trial on his plea of not guilty to charges of murder and carrying a weapon on licensed premises. The jury assessed his punishment at fifteen years and one day in the Texas Department of Corrections.

Appellant's first ground of error is that the trial court erred by overruling appellant's motion for instructed verdict because the indictment charged the killing of Hilario Cervantes and the proof showed the killing of Hilario Roquis. Article 21.07 of the Texas Code of Criminal Procedure (Vernon 1966) provides that "when a person is known by two or more names, it shall be sufficient to state either name." In *Smith v. State*, 446 S.W.2d 883 (Tex.Crim.App. 1969), the deceased was listed in the indictment as Roberta Thornton and the proof showed that she was also known by the surname Jackson. The court held that "when the deceased in a murder prosecution has gone by two names and the indictment refers to one and certain evidence refers to the other, variance between indictment and proof is immaterial." Id. at 885.

In the case of *Rivas v. State*, 501 S.W.2d 918 (Tex.Crim.App.1973), the deceased was named in the indictment as "Everado Gaitan." The proof showed that he was a Mexican national who had been in this country only a short time. The death certificate offered by appellant showed the deceased's name as "Everardo Gaytan Maldonado." Evidence was admitted to show the Spanish custom of a person taking the names of both his father and mother. The surname of the mother of the deceased was "Maldonado." There was also evidence in the record that the deceased was known by the name alleged in the indictment. The court held there was no fatal variance. Id. at 920.

In the case at bar, the death certificate identifies the deceased as Hilario Roquis; it lists his father's surname as Roquis and it lists his mother's surname as Cervantes; it indicates the removal of deceased's body to Matamoros, Mexico. The evidence in the case included testimony about the custom of Mexican nationals regarding their surnames. Detective-Sergeant Richard Rodriguez testified that, in his experience, he found that Mexican nationals carried their mother's last name, unlike Mexican-Americans who generally carried their father's last name. Detective Rodriguez, when asked if he had been able to determine the name of the deceased, answered, "Cervantes. Roquis Cervantes was the name on the individual." Eyewitness, Juan Flores, identified the deceased as Hilario Cervantes.[1]

■ There is sufficient evidence in the record to show that the deceased was known by the name alleged in the indictment.

■ The object of the doctrine of variance is to avoid surprise, and for such variance to be material it must be such as to mislead the party to his prejudice. *Plessinger v. State*, 536 S.W.2d 380 (Tex.Crim. App.1976). The purposes of the requirement that the proof correspond to the allegations in the indictment are: first, to put an accused on notice as to the charge against him; and second, to allow the accused to protect himself against double jeopardy. *Gill v. State*, 670 S.W.2d 758 (Tex.App.—Corpus Christi 1984, no pet.). There is no question that appellant knew the substance of the charges against him, as illustrated by his defense against the

---

1. On cross-examination, Flores somewhat hesitantly agreed that the name "Hilario Roquis" was correct. He was cross-examined as follows:

    Q  Now, the name of the man that was lying on the ground was named Roquis; is that correct?

    A  (The witness gives no response.)
    Q  Hilario Roquis?
    A  Yes, sir.

    Flores did not, however, repudiate his former identification of the deceased as Hilario Cervantes.

charges. Should a further attempt be made to put appellant in jeopardy for this offense, he has ample material available with which to defeat such an attempt.

The proof of the name of the deceased conformed with the indictment. Appellant's first ground of error is overruled.

In ground of error number two, appellant claims that the evidence is insufficient to sustain the conviction. The evidence shows that, on November 22, 1983, a fight broke out in the Safari Lounge in Aransas Pass, Texas, which resulted in the fatal shooting of one of the participants of that fight. An eyewitness, Juan Flores, testified that appellant and deceased were hitting each other with "sticks" just prior to the shooting. Flores testified that he saw appellant shoot the deceased and drop the gun on the floor. Another eyewitness, Margie Peed, testified that she saw appellant "pointing" at deceased at the time of the shooting, but said that it was too dark in the bar for her to determine whether there was a gun in appellant's hand. Peed also testified that she saw no one else "pointing" at deceased at the time he was shot. Appellant, when arrested, had two live rounds of ammunition in his pocket, which were the same caliber as the murder weapon. Additional testimony placed appellant, at the time of the shooting, with his back to the corner, with the deceased facing him. The murder weapon was found on the floor where appellant had been standing and fighting with the deceased.

The appellate court, when reviewing a case to determine the sufficiency of the evidence to support a conviction, will look at all the evidence in the light most favorable to the verdict or judgment. *Houston v. State,* 663 S.W.2d 455 (Tex.Crim.App. 1984). After reviewing the entire record, we find that there was sufficient evidence for the jury to find beyond a reasonable doubt that appellant shot the deceased. The evidence clearly places appellant in the position from which the fatal shot was fired while appellant was standing alone in a corner fighting with the deceased. Addi-

tionally, an eyewitness testified that he saw appellant shoot the deceased. The evidence is sufficient to sustain the conviction. Appellant's second ground of error is overruled.

Appellant's third ground of error alleges that the trial court erred in failing to grant appellant's motion for instructed verdict because the evidence was conclusive as a matter of law that deceased was killed as a result of his unlawful, deadly attack on appellant. A review of the evidence does not substantiate appellant's contention. Appellant and deceased were fighting with sticks. Appellant only received one observable injury, a knot over his right eye.

The matter of self-defense was a fact question submitted for determination by the jury. As previously stated by this Court: "The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony. A jury is entitled to accept one version of the facts and reject another or reject any of a witness' testimony." *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex. Crim.App.1981); *See* TEX.CODE CRIM. PROC.ANN. art. 38.04 (Vernon 1979); *Stanley v. State,* 664 S.W.2d 746 (Tex.App. —San Antonio 1983, pet. ref'd). The jury heard eyewitness Juan Flores testify to having seen appellant and deceased fighting with sticks, then to seeing appellant shoot deceased and then drop the gun on the floor. The jury had ample opportunity to see all the photographs and exhibits, and to determine the credibility of the witnesses and the weight to be given their testimony. The jury resolved this matter against appellant. We cannot say as a matter of law that this decision was error. *Rios v. State,* 510 S.W.2d 326, 327 (Tex.Crim.App. 1974). Appellant's third ground of error is overruled.

The judgment of the trial court is AFFIRMED.