IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-053-CR





LEONARD HAMILTON, JR.,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT



NO. CR91-310, HONORABLE FRED A. MOORE, JUDGE PRESIDING



 




 This is an appeal from a conviction for burglary of a building. The indictment
alleged three prior felony convictions for the enhancement of punishment. After the jury found
appellant guilty of the primary offense, he entered a plea of "true" to the enhancement paragraphs. 
The jury assessed his punishment at ninety-nine years' imprisonment.

 Appellant advances four points of error. First, appellant challenges the legal
sufficiency of the evidence to sustain the conviction. Second, appellant claims that the trial court
erred in overruling his motion to suppress evidence. Third, appellant contends that the trial court
erred in refusing a request to instruct the jury to disregard the response of a witness after
appellant's objection to the response had been sustained. Fourth, appellant urges that the trial
court erred in denying the motion for an instructed verdict because the indictment alleged the
owner to be "Roberts" and proved "Robarts." The fourth point is a legal sufficiency question as
is the first point of error. We will affirm the conviction.

 The points of error will not be considered in numerical order. In point of error
two, appellant contends that the trial court erred in overruling the motion to suppress evidence
"because the officer's stop and detention of the appellant was not based on sufficient probable
cause." After a hearing on the motion to suppress, at which San Marcos Police Officer John Luna
was the only witness, the trial court overruled the motion. It is this action of which appellant
complains.

 In a suppression hearing, the trial court is the sole trier of fact, the judge of the
credibility of the witnesses and the weight to be given to their testimony. Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990). It may accept or reject any or all of a witness's
testimony. Taylor v. State, 604 S.W.2d 175, 177 (Tex. Crim. App. 1980). The findings of the
trial court and its ruling following a suppression hearing will not be disturbed absent an abuse of
discretion. Cantu v. State, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991); Rivera v. State, 803
S.W.2d 80, 96 (Tex. Crim. App. 1991); Dancy v. State, 728 S.W.2d 772, 777 (Tex. Crim.
App.), cert. denied, 484 U.S. 975 (1987).

 In reviewing the trial court's decision, an appellate court does not engage in its own
factual review; it determines only whether the record supports the trial court's ruling and whether
the trial court properly applied the law to the facts. Romero, 800 S.W.2d at 543. The standard
for reviewing a trial court's decision denying a motion to suppress is that the evidence should be
viewed in the light most favorable to the trial court's ruling. Sawyers v. State, 724 S.W.2d 24,
35 (Tex. Crim. App. 1980).

 At the suppression hearing, Officer Luna testified that about 4:30 a.m. on July 27,
1991, he was alone on patrol. As Luna neared the intersection of Cheatman and C.M. Allen
Streets in San Marcos, he observed two men behind the C.M. Allen Business Complex. There
had been a burglary of a computer store in the complex some two months before, and since that
time three burglary alarms and a suspicious person call had been answered at that location. 
Officer Luna stopped his patrol vehicle and backed up to an alley or driveway running behind the
business complex. He pulled his vehicle into the alley and stopped. With his vehicle's headlights
and the aid of an overhead mercury vapor light behind the complex, Officer Luna was able to
observe the two men walking towards him. The younger man (later identified as appellant's
brother) took a step to the side as if he was going to run, but fell back in stride. Luna viewed the
action as a furtive gesture. As the men reached the police vehicle, the older man (later identified
as appellant) initiated the conversation by asking, "What's up, Officer?" Luna responded,
"What's up, fellows?" The officer observed that the men were carrying a number of items
appearing to be electrical equipment. They were sweating and out of breath. There was mud on
their clothing and what appeared to be blood on appellant's shirt. Luna asked: "Do you mind
if I ask where you guys are coming from?" Appellant responded that they had "just got through
doing a gig" and were going home. Appellant freely engaged in conversation with the officer. 
Luna observed a reel-to-reel movie projector in appellant's possession but observed no film. 
Appellant stated that the projector had been used in the "gig." He then claimed ownership of all
of the equipment the two men possessed. Appellant affirmatively responded to the officer's
request to check the serial numbers and encouraged the officer to do so. When Officer Luna
removed the cover on the movie projector, he saw Southwest Texas State University decals and
identification numbers on the projector. Appellant then volunteered that he was a university
student and had checked the projector out of the library a year and a half ago and that it was
overdue. The dispatcher was requested to send a university officer to the scene to determine the
ownership of the property. An additional request was made for the dispatcher to determine if
appellant was a student at the university. Just when Luna determined appellant's name and social
security number is not reflected by the record. A university officer arrived and identified the
property as that of the university. Luna was then informed that appellant was not a student at the
university and that he had an outstanding arrest warrant for a parole violation. Luna testified that
appellant was arrested for the first time by virtue of the warrant.

 On cross-examination, appellant introduced Officer Luna's offense report, and had
Luna admit it was a fair representation of the sequence of events and perhaps more accurate than
his testimony. Neither at the suppression hearing nor on appeal does appellant rely upon any
discrepancies.

 Not all encounters between police and citizens invoke the protection of the Fourth
Amendment. Florida v. Royer, 460 U.S. 491, 497-98 (1983); Terry v. Ohio, 392 U.S. 1, 19 n.16
(1968); Mitchell v. State, 831 S.W.2d 829, 832 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd). 
Police officers are allowed just as much freedom as anyone to ask questions of fellow citizens. 
Daniels v. State, 718 S.W.2d 702, 704 (Tex. Crim. App. 1986), overruled on other grounds,
Juarez v. State, 758 S.W.2d 772, 780 n.3 (Tex. Crim. App. 1988); White v. State, 846 S.W.2d
427, 430 (Tex. App.--Houston [14th Dist.] 1992, no pet.).

 Law enforcement officers do not violate the Fourth Amendment by merely
approaching an individual on the street or other public place, by asking him if he is willing to
answer some questions, by putting questions to him if the person is willing to listen, or by
offering in evidence in a criminal prosecution his voluntary answers to such questions. The mere
fact that an officer may introduce himself as a police officer does not convert the encounter into
a seizure requiring some level of objective justification. Royer, 460 U.S. at 497. A seizure does
not occur simply because a police officer approaches an individual and asks a few questions. So
long as a reasonable person would feel free "to disregard the police and go about his business,"
California v. Hodari, U.S. , 111 S.Ct. 1547, 1551 (1991), the encounter is consensual and
reasonable suspicion is not required. Florida v. Bostick, U.S. , 111 S.Ct. 2382, 2386 (1991). 
It is only when the police questioning of a citizen becomes a detention that it must be supported
by reasonable suspicion. Terry, 392 U.S. at 19 n.16; Mitchell, 831 S.W.2d at 832.

 Under Terry, the police can stop and briefly detain a person for investigative
purposes if they have a reasonable suspicion supported by articulable facts that criminal activity
"may be afoot," even if they lack probable cause under the Fourth Amendment. Reasonable
suspicion entails some minimal level of objective justification for making a stop--that is, something
more than an inchoate and unparticularized suspicion or "hunch," but considerably less than proof
of wrongdoing by a preponderance of the evidence, and obviously less demanding than that for
probable cause. United States v. Sokolow, 490 U.S. 1, 7 (1989). It is clear that not all seizures
of the person must be justified by probable cause. Royer, 460 U.S. at 498.



Reasonable suspicion is a less demanding standard than probable cause not only in
the sense that reasonable suspicion can be established with information that is
different in quantity or content than that required to establish probable cause, but
also in the sense that reasonable suspicion can arise from information that is less
reliable than that required to show probable cause.



Alabama v. White, 496 U.S. 325, 330 (1990).

 The concept of reasonable suspicion, like probable cause, is "not readily, or even
usefully reduced to a neat set of rules." Illinois v. Gates, 462 U.S. 213, 232 (1983); see also
Sokolow, 490 U.S. at 7. In evaluating the validity of a stop, the totality of the circumstances--the
whole picture--must be considered. Sokolow,. 490 U.S. at 7; United States v. Cortez, 449 U.S.
411, 417 (1981). The circumstances giving rise to a reasonable suspicion need not be criminal
in themselves; rather they could include any facts which increase the likelihood of criminal
activity. Crockett v. State, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991). Mere suspicion,
however, is insufficient for a Terry detention. The facts must support a reasonable suspicion that
some activity out of the ordinary is occurring or has occurred, the suspect is connected with the
suspicious activity, and the suspicious activity is related to crime. Hoag v. State, 728 S.W.2d
375, 380 (Tex. Crim. App. 1987).

 In the instant case, the initial encounter was a mere police-citizen contact. In fact,
appellant and his brother approached the officer seated in his police vehicle and initiated the
conversation with the officer and consented to answering the officer's questions. The officer
needed no grounds for reasonable suspicion at that point. There was no detention for Fourth
Amendment purposes at that time. Holladay v. State, 805 S.W.2d 464, 467 (Tex. Crim. App.
1991). It was clearly the sort of consensual encounter that implicates no Fourth Amendment
interest. Florida v. Rodriguez, 469 U.S. 1, 5-6 (1984). It is difficult to tell from the sole
witness's testimony when the initial encounter escalated into an investigative detention. If it can
be concluded that Officer Luna's mere request for consent to examine the movie projector
converted the initial encounter into an investigative one implicating appellant's Fourth Amendment
rights, Holloday, 805 S.W.2d at 472, we hold, without reiterating the facts, that such investigative
detention was justified by articulable and reasonable suspicion. Rodriguez, 469 U.S. at 6. No
probable cause was required as claimed by appellant. Applying the standard of review required,
we find that the trial court did not abuse its discretion in denying the motion to suppress evidence. 
Point of error two is overruled. (1)

 In the first point of error, appellant challenges the sufficiency of the evidence to
sustain the conviction. Appellant does not appear to contest the independent evidence of a
burglary of a building by someone, but contends that the State relied upon evidence of recent
unexplained possession of stolen property to convict him, and such evidence was insufficient
because the State failed to prove that the property found in his possession was the identical 
property taken from the burglarized building.

 The evidence showed that on July 27, 1991, the Jowers Building on the campus of
Southwest Texas State University was broken into during the nighttime hours. Muddy footprints
were left in the student lounge and a food machine was opened. Muddy footprints led to the door
of the recreational/sports department. A window in the door was broken and entry obtained.
Inside, glass and a newspaper with what appeared to be blood were found. A number of items
were missing. The health/physical education department in the building was also broken into and
several items therein were missing. There was independent evidence of a burglary.

 When appellant and his brother encountered Officer Luna at 4:30 a.m. on July 27,
1991, they were carrying a number of items or objects, some of which were found to bear
university decals and bore serial numbers of property purchased by the university. Appellant's
shoes and clothing were muddy, his hand was cut and his shirt bore marks that appeared to be
blood.

 The inference of guilt in a burglary case sufficient to sustain a conviction may arise
from the defendant's possession of any or all of the property stolen or taken in a recent burglary. 
See Harris v. State, 656 S.W.2d 481, 483 (Tex. Crim. App. 1983); Jackson v. State, 645 S.W.2d
303 (Tex. Crim. App. 1983); Ward v. State, 581 S.W.2d 164, 168 (Tex. Crim. App. 1979);
Rodriguez v. State, 549 S.W.2d 747, 748 (Tex. Crim. App. 1977). However, in order to warrant
such an inference of guilt from the circumstances of possession alone, such possession must be
personal, it must be recent, it must be unexplained, and must involve a distinct and conscious
assertion of right to the property by the defendant. Grant v. State, 566 S.W.2d 954, 956 (Tex.
Crim. App. 1978); Vela v. State, 771 S.W.2d 659, 661 (Tex. App.--Corpus Christi 1989, pet.
ref'd). When a tenable explanation is offered by the defendant as to how the property came into
his possession, the State must be able to prove it is false or unreasonable. Adams v. State, 552
S.W.2d 812, 815 (Tex. Crim. App. 1977); Marmon v. State, 704 S.W.2d 90, 91 (Tex.
App.--Dallas 1985, pet. ref'd). When the defendant offers a reasonable explanation at the time his
possession of stolen property is first challenged, either directly or circumstantially, the necessity
of showing that the explanation is false in order to give rise to the inference that the defendant
committed the burglary is greater than if the explanation is offered at a later time. Callahan v.
State, 502 S.W.2d 3, 6 (Tex. Crim. App. 1973); Garza v. State, 841 S.W.2d 19, 22 (Tex.
App.--Dallas 1992, no pet.); Buchanan v. State, 780 S.W.2d 467, 469-70 (Tex. App.--Dallas 1989,
pet. ref'd). (2)

 Additionally, when evidence of recently stolen property is relied upon for
conviction, it must be shown that the property was the identical or same property taken from the
burglarized place. Owens v. State, 576 S.W.2d 859 (Tex. Crim. App. 1979); Nichols v. State,
479 S.W.2d 277, 278 (Tex. Crim. App. 1972); Cantu v. State, 655 S.W.2d 278, 280 (Tex.
App.--Corpus Christi 1983, no pet.). It is this last aspect upon which appellant relies.

 In the instant case, appellant was shown to be in possession of recently stolen
property. When his possession was first questioned by Officer Luna about 4:30 a.m., appellant
asserted ownership of the property. When the university's decals were observed on several of the
items of property, appellant changed his story at least as to a film projector, and claimed he was
a student and had checked the projector out of the library a year and a half before the date in
question. Appellant only appears to claim that items found in his possession were not identified
as items of property taken from the university.

 The State relied upon the alleged burglary with intent to commit theft "of a portion
of a building" not then open to the public without the effective consent of Dawn Roberts. The
evidence shows that the Jowers Building on the campus of Southwest Texas State University was
broken into on the night of July 26 or early morning hours of July 27, 1991. The
recreational/sports department portion of the building was entered and items taken therefrom. 
Robarts, associate director of the recreational/sports department, recognized a briefcase from a
photograph shown to her as the briefcase taken from her department without her consent. The
briefcase was shown to have been in appellant's possession when he was stopped by Officer Luna. 
Robarts also identified an Emerson jam box from a photograph as the jam box taken from her
department without consent. This item of property was also shown to have been in appellant's
possession. Robarts revealed that a large set of office keys was also missing from her department. 
Shorn Ratcliff, appellant's 15-year-old brother, testified for the prosecution and stated that in his
presence, appellant threw a large set of keys into the river near the university. There clearly was
evidence from which the jury could have found that appellant was in possession of some of the
property taken in the burglary alleged in the indictment. Christopher v. State, 833 S.W.2d 526,
527-28 (Tex. Crim. App. 1992). For the same reasons set forth in Christopher, we distinguish
Nichols, Owens, and Cantu, upon which appellant relies.

 In addition to the items of property discussed above, a cassette deck, a film
projector, and a video-cassette recorder found in appellant's possession were identified by serial
numbers as belonging to the university and shown to have been taken from other parts of the
Jowers Building than the recreational/sports department. When stopped, appellant had mud on
his clothing and shoes. There were muddy footprints found in the Jowers Building. There was
a similarity in the tread pattern of appellant's shoes and a lifted footprint, both exhibits having
been introduced before the jury.

 Appellate review of legal evidentiary sufficiency is limited to determining whether,
in the light most favorable to the jury's verdict, a rational trier of fact could have found beyond
a reasonable doubt the essential elements of the crime charged. Jackson v. Virginia, 443 U.S.
307, 319 n.12 (1979); Valdez v. State, 776 S.W.2d 162, 165 (Tex. Crim. App. 1989), cert.
denied, 495 U.S. 963 (1990). The standard og review is the same in both circumstantial and
direct evidence cases. Herndon v. State, 787 S.W.2d 408, 409 (Tex. Crim. App. 1990). In
applying this standard, if we find there is a reasonable hypothesis other than the guilt of the
defendant, then we cannot say that guilt has been shown beyond a reasonable doubt. Turner v.
State, 805 S.W.2d 423, 427 (Tex. Crim. App.), cert. denied, 112 S.Ct. 202 (1991). (3) Proof that
amounts only to a strong suspicion or mere probability is insufficient. McCarron v. State, 605
S.W.2d 589, 593 (Tex. Crim. App. 1980). However, every circumstantial evidence case must
necessarily be tested by its own facts to determine the legal sufficiency of the evidence supporting
the conviction. Id. If the combined and cumulative force of all the incriminating circumstances
warrants a conclusion of guilt, the evidence is sufficient. Garza, 841 S.W.2d at 21.

 The jury is the trier of fact and the judge of the credibility of the witnesses and the
weight to be given their testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979);
Castellano v. State, 810 S.W.2d 800, 807 (Tex. App.--Austin 1991, no pet.). The appellate court
does not resolve any conflict of fact, weigh the evidence, or evaluate the credibility of the
witnesses. See Wicker v. State, 667 S.W.2d 137, 143 (Tex. Crim. App.), cert. denied, 469 U.S.
892 (1984).

 Viewing the evidence in the light most favorable to the jury's verdict, we conclude
that a rational trier of fact could have found beyond a reasonable doubt the essential elements of
the burglary charged, and could have found beyond a reasonable doubt that appellant's explanation
for possession of the stolen property was false and that the property in his possession was the
same property stolen. The first point of error is overruled.

 In his fourth point of error, appellant urges that the trial court erred in denying the
motion for an instructed verdict "because the State failed in its burden to prove all the essential
facts alleged in the indictment." The thrust of the contention is that the burglary indictment
alleged that the entry was without the effective consent of "Dawn Roberts" when the proof showed
"Dawn Robarts." Appellant contends that this is not a case of idem sonans. We shall consider
the point of error as a challenge to the sufficiency of the evidence. See Madden v. State, 799
S.W.2d 683, 686 n.3 (Tex. Crim. App. 1990).

 The name of the complaining witness must be alleged and proven. A material
variance between the allegation and proof will render the evidence insufficient to sustain the
conviction. Grant v. State, 568 S.W.2d 353, 354 (Tex. Crim. App. 1978); Gayton v. State, 732
S.W.2d 724 (Tex. App.--Corpus Christi 1987, pet. ref'd). Absolute accuracy in spelling is not
required. Dingler v. State, 705 S.W.2d 144, 145 (Tex. Crim. App. 1984). A misspelled name
in an indictment does not create a fatal variance between the allegation and the proof if the name
alleged and that pronounced is idem sonans. Jenke v. State, 487 S.W.2d 347, 348 (Tex. Crim.
App. 1972); Obeidat v. State, 787 S.W.2d 627, 628 (Tex. App.--Fort Worth 1990, pet. ref'd).

 Questions involving the rule of idem sonans must be raised in the first instance at
trial. Smith v. State, 763 S.W.2d 836, 840 (Tex. App.--Dallas 1988, pet. ref'd). If before a jury,
a fact issue requiring the application of the rule of idem sonans is raised by the testimony, the
court should instruct the jury to resolve the issue. Martin v. State, 541 S.W.2d 605, 608 (Tex.
Crim. App. 1976); Smith, 763 S.W.2d at 840.

 The witness testified that her name was Dawn Robarts, not Roberts, and that
Robarts was her married name. In a series of questions she indicated that there was a difference
in the pronunciation in the Roberts and Robarts names, although the only difference in the spelling
was an "e" and an "a." Robarts testified that she had been called or known as "Roberts" on more
than one occasion. The testimony revealed that the witnesses referred to her as both "Robarts"
and "Roberts."

 The issue was first raised by a motion for an instructed verdict. The trial court,
having heard the testimony, denied the motion, and then submitted the fact issue to the jury with
appropriate instructions in accordance with the Martin opinion. The jury, by its verdict, resolved
the issue against appellant. We will refrain from disturbing the jury's determination that the
names were idem sonans unless the evidence shows that the names are patently incapable of
sounding the same or that appellant was misled to his prejudice. See Smith, 763 S.W.2d at 840;
see also Nitcholas v. State, 524 S.W.2d 689, 690 (Tex. Crim. App. 1975) ("Danny" and "Denny"
are idem sonans).

 We need not rest our decision on the rule of idem sonans. Article 21.07 provides
that when a person is known by two or more names, it shall be sufficient to state either name [in
the indictment]. Tex. Code Crim. Proc. Ann. art. 21.07 (West 1989). The statute only requires
that the person be known by two names, not that he or she be "commonly known" by such names. 
Blankenship v. State, 785 S.W.2d 158, 159 (Tex. Crim. App. 1990). There is no fatal variance
between allegation and proof if the person is known by both names. Lopez v. State, 610 S.W.2d
764, 765 (Tex. Crim. App. 1981); Smith v. State, 446 S.W.2d 883, 885 (Tex. Crim. App. 1969);
Garcia v. State, 760 S.W.2d 817, 820 (Tex. App.--Corpus Christi 1988), aff'd, 792 S.W.2d 88
(Tex. Crim. App. 1990). Here, there was evidence that Robarts was known by both names, even
if not "commonly known." There is no fatal variance. The claim of failure of proof is rejected. 
Point of error four is overruled.

 In his third point of error, appellant argues that the trial court erred in refusing to
instruct the jury "to disregard the response of the witness after the court had sustained appellant's
objection." Sixty-five year old Bill Strain was a criminal investigator with the Southwest Texas
State University Police Department. He had previous experience with the Seguin Police
Department. On July 27, 1991, he assisted in the investigation of the burglary of the Jowers
Building on the university campus. In the student lounge, Strain found a food machine that was
open and discovered mud on the floor. He was able to lift two latent footprints (State's exhibits
40 and 41). Strain then testified that he had compared the shoes taken from appellant (State's
exhibit 11) with the footprints he had lifted. He was then asked what observations he made, to
which he responded:



A: I'm not an expert and any person can take these and determine that they are
the same brand shoe, they are the same size shoe. By comparing coloration
within the . . . the coloration of the residue, which is still evident here, you
will find that it is very similar in composition, color, and density to the
residue which is on this.


 I believe these to be the shoes that made it. And, of course, this is a brand
of which there are . . . .



 Defense counsel then objected that the witness was testifying in narrative form and
stating his belief when he had just testified that he was not an expert. The objection was
sustained, but the trial court denied the request for an instruction to disregard the "last statement"
of the witness. The court explained that the witness had stated: "I believe," and had not
completed the statement when interrupted by the objection. The motion for a mistrial was
overruled. Thereafter, the witness Strain testified that he saw a similarity between the shoes and
the tread pattern on the lifted footprint. Appellant's belated objection to this latter question and
answer on the basis that Strain was not an expert was overruled.

 Rule 701 provides:



If the witness is not testifying as an expert, his testimony in the form of opinions
or inferences is limited to those opinions or inferences which are (a) rationally
based on the perception of the witness and (b) helpful to a clear understanding of
his testimony or the determination of a fact in issue.



Tex. R. Crim. Evid. 701; see also Copeland v. State, 848 S.W.2d 199, 201 (Tex. App.--Corpus
Christi 1992, pet. ref'd).

 In the instant case, Strain's testimony was based on first-hand knowledge and his
perception. The testimony was helpful to a clear understanding of his testimony and to the
determination of a fact in issue at the guilt/innocence stage of the trial. The challenge went to the
weight, not the admissibility, of the testimony. Yohey v. State, 801 S.W.2d 232, 243 (Tex.
App.--San Antonio 1990, pet. ref'd). The testimony was admissible. See Wilson v. State, 854
S.W.2d 270, 276 (Tex. App.--Amarillo 1993, pet. ref'd); Yohey, 801 S.W.2d at 243; Austin v.
State, 794 S.W.2d 408, 410 (Tex. App.--Austin 1990, pet. ref'd).

 When appellant's initial objection was sustained, he received more relief than that
to which he was entitled. Appellant is now in no position to complain that the trial court did not
give the jury instruction requested. The third point of error is overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Powers, Jones and Onion*

Affirmed

Filed: April 13, 1994 

Do Not Publish











* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. We have decided the point of error on the basis of the Fourth Amendment. If it be
appellant's position that Article I, section 9 of the Texas Constitution affords greater
protection than the Fourth Amendment to the United States Constitution, he has not briefed
it on that basis. Federal and state constitutional claims should be argued in separate points
of error with separate substantive analysis or argument provided for each ground. Muniz
v. State, 851 S.W.2d 238, 251-52 (Tex. Crim. App. 1993); Morehead v. State, 807 S.W.2d 577,
579 n.1 (Tex. Crim. App. 1991). Appellant has not provided in a separate point any argument
or authority regarding any greater protection afforded by the state constitution. Any such
contention is not properly briefed. Tex. R. App. P. 74(f); Robinson v. State, 851 S.W.2d 216,
222 n.4 (Tex. Crim. App. 1993). "We will not make appellant's state constitutional argument for
him." Muniz, 851 S.W.2d at 252.
2. However, whether the defendant's explanation is reasonable is a question of fact. Smith
v. State, 518 S.W.2d 823, 825 (Tex. Crim. App. 1975). The finder of fact is not bound to accept
a defendant's explanation for possession of recently stolen property. Callahan, 502 S.W.2d at
6; Buchanan, 780 S.W.2d at 470.
3. We are aware of Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991), regarding the
standard of review in circumstantial evidence cases and abolishing the reasonable hypothesis
construct. Geesa is not be applied retroactively. Id. at 165. The instant case was tried in January
1991, prior to the Geesa decision.